# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **Irma Clark, on behalf of Joseph Lewis Clark,** | : | |
| | : | |
| Plaintiff, | : | Case No. 1:07-cv-00510 |
| | : | |
| -vs- | : | District Judge Michael R. Barrett |
| | : | |
| **Edwin Voorhies, et al.,** | : | |
| | : | |
| Defendants. | : | |

### Defendants' Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings. Fed. R. Civ. Pro. 12(c). The attached Memorandum supports this Motion.

Respectfully submitted,

NANCY H. ROGERS
Attorney General of Ohio

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
Assistant Attorney General
Corrections Litigation Section
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215
614/644-7233; Fax: 866-459-6675
eholloway@ag.state.oh.us
Trial Counsel for Defendants

**Memorandum in Support**

### I. Introduction

For nine days in January 1984, Joseph Lewis Clark preyed upon the people of Ohio in the city of Toledo. During that time, he robbed four people and shot three of them, two of whom died, all in an effort to feed his drug addiction. He killed his first murder victim by shooting him in the back of the head; he killed his second murder victim by shooting him in the chest. In his last crime, he robbed a man at an automatic teller machine and shot but did not kill him. He soon was caught by local law enforcement. *See Clark v. Mitchell*, 425 F.3d 270, 273-6 (6th Cir. 2005) (quoting in part *State of Ohio v. Clark*, 38 Ohio St.3d 252, 527 N.E.2d 844, 846-7 (1988)).

After a trial, Mr. Clark was sentenced to death. On May 2, 2006, after all possible appeals and collateral challenges in state and federal courts, *id.*, the Ohio Supreme Court's warrant of death was enforced, and Mr. Clark died that day, (*see* Doc. 1, Complaint, ¶ 5).

Plaintiff Irma Clark, Mr. Clark's mother, filed the instant civil rights action. (Doc. 1, Complaint.) The Complaint arguably only sets forth allegations regarding alleged failures to abide by state law. (Doc. 1, Complaint, ¶¶ 9-11, 18, and 38; *and see* ¶ 32-3.) Plaintiff Clark does not specify which of Mr. Clark's federally protected rights were violated. (*Id.*, *passim*.) She only indicates, in state tort law fashion, that problems with accessing Mr. Clark's veins were foreseeable. (*Id.*) She presumes that, due to past problems with accessing the veins of prior condemned inmates with a history of intravenous drug abuse, these Defendants should have known her son's veins would fail. (Doc. 1, Complaint, ¶ 37.) Because of her misplaced claims, Plaintiff's Complaint must be dismissed, as Plaintiff Clark failed to state any claims for which the Court may grant relief.

## II. Argument

**A. Standard of Review**

No reasonable dispute is expected regarding the applicable standard to review a motion for judgment on the pleadings.[1] The Court should grant such judgment for these reasons:

1. Ohio's death penalty procedures do not violate the Eighth Amendment.
2. 42 U.S.C. § 1983 provides remedies only if federally protected rights are violated. The Complaint alleges only failures to follow state law and asserts at most a claim of negligence.
3. Based upon prevailing concepts of society's evolving standards of decency, no Defendant violated Mr. Clark's Eighth Amendment rights.
4. Defendants are entitled to immunity, either qualified, quasi-judicial, or both.
5. This Court has no jurisdiction to resolve any state law claims.

**B. Elements of a § 1983 claim**

To establish a viable claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that a person, acting under color of state law, violated a federally protected right. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels* v. *Williams*, 474 U.S. 327 (1986)). Conclusory allegations fail to state a claim for purposes of any claim brought under § 1983. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008). Here, Plaintiff Clark failed to identify any applicable federally protected right, let alone that a right was violated.

**C. Each Defendant is entitled to judgment on the pleadings.**

    **1. Ohio's death penalty procedures do not violate the Eighth Amendment.**

In its recent decision in *Baze v. Rees*, the Supreme Court addressed the constitutionality of the Commonwealth of Kentucky's death sentence procedures. 553 U.S. ___, 128 S.Ct. 1520

---

[1] *See Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001) (standard for 12(c) motions); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976) (no duty for Court to augment a Complaint with allegations not specifically presented by plaintiff).

3

(2008).[2] *Baze* concluded that Kentucky's death sentence execution protocols were constitutionally sound. *Baze,* 128 S.Ct. at 1529 (2008). In part, the Supreme Court observed that the death penalty itself is constitutionally permissible. The majority opinion then explained what a plaintiff must show to establish that a set of death penalty procedures themselves are unconstitutional, given that the death penalty itself is constitutional. *Id.* [3], [4], [5]

To establish a claim using *Baze*, a plaintiff must contend that he or she has an alternative method of conducting the execution of the death penalty. That alternative must be better or more humane than what the State uses. *Baze* requires a plaintiff to show that, "a proffered alternative[]…effectively address[es] a 'substantial risk of serious harm.'" *Baze*, 128 S.Ct. at 1531, quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). To establish liability, *Baze* further requires that:

---

[2] In Kentucky, a condemned inmate is put to death by using a set of three drugs: (1) sodium thiopental, which renders the inmate unconscious; (2) pancuronium bromide, which paralyzes the inmate; and (3) potassium chloride, which stops the inmate's heart. *Baze*, 128 S. Ct. at 1528. Ohio uses the same set of drugs in its death penalty execution procedures. As in Kentucky, Ohio uses a procedure with three drugs to execute a death warrant as issued by the Ohio Supreme Court on a lawful sentence of death. Specifically, Ohio applies the same three set of drugs as reviewed in *Baze*, although the State of Ohio might apply different amounts of each drug. *See* DRC Policy 01-COM-11 (Eff. 11th Oct. 2006) (copy attached); *see* Ohio Rev. Code § 2949.22 (death sentence to be carried out via lethal injection of drug or combination of drugs) *and see* Ohio Rev. Code § 2949.24 (state prison official shall execute death sentence in accordance with § 2949.22 of the Ohio Revised Code).

[3] Although seven Justices agreed that the Kentucky death sentence protocols were constitutionally sound, only a three Justice plurality could be gathered to establish the applicable standard to assess the constitutional viability of a particular state's death sentence protocols. *Baze*, 128 S. Ct. at 1525.

[4] Justice Thomas observed in his concurring opinion that the Eighth Amendment itself does not prohibit the death penalty and the Fifth Amendment contemplates it as well. *Baze*, 128 S. Ct. at 1556.

[5] Addressing the role of pain in the execution process, Chief Justice Roberts explained:

> It necessarily follows that there must be a means of carrying [a sentence of death] out. Some risk of pain is inherent in any method of execution – no matter how humane – if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions.

*Baze*, 128 S.Ct. at 1529. The Court's controlling opinion contemplates that pain may be part of the process to end the life of a condemned inmate. Any claim asserting otherwise must fail as a matter of law.

> …the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as "cruel and unusual" under the *Eighth Amendment*.

*Baze*, 128 S.Ct. at 1532.

Plaintiff Clark's Complaint is devoid of any language that suggests she has a better, more humane procedure that complies with *Baze*. It is devoid as well of any allegation that Mr. Clark offered a better procedure prior to the execution order being enforced. (Doc. 1, Complaint, ¶ *passim*.) The Complaint does not articulate how Defendants could have performed the instant execution of the death warrant, issued by the Ohio Supreme Court, in a manner that would have been (1) feasible, (2) readily implemented, and (3) able to significantly reduce a substantial risk of severe pain. (Doc. 1, Complaint, ¶ *passim*.) It merely contests the manner in which state procedures were followed to enforce an order to carry out the death penalty issued in Mr. Clark's criminal case. (*Id., passim*.) As such, the instant claim should fail. *Baze*, 128 S.Ct. at 1531-2.

**2. 42 U.S.C. § 1983 provides remedies only if federally protected rights are violated. The Complaint alleges only failures to follow state law and asserts at most a claim of negligence.**

Ohio's procedures to execute a death warrant are constitutionally firm. *See Baze*, 128 S.Ct. at 1531-2. Plaintiff Clark nonetheless challenges how these Defendants followed each step during the process to end Mr. Clark's life. She complains that Defendants did not fulfill statutorily defined duties, asserting a negligence claim. (Doc. 1, Complaint, ¶¶ 9-11, 18, and 38; *and see* ¶ 32-3.)

No § 1983 claim prevails if it only alleges that state law has been violated. The Supreme Court has explained:

> Although [42 U.S.C. § 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law, *see*, *e.g.*, *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980); *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).

*Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992); *see West v. Atkins*, 487 U.S. 42, 48 (1988) (citing 42 U.S.C. § 1983); *Mezibov v. Allen*, 411 F.3d 712, 716-7 (6th Cir. 2005). When a Plaintiff "fails to make a showing on any essential element of a § 1983 claim, [the claim] must fail." *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

In this instance, the Complaint attempts to set forth civil rights violations, but it succeeds in asserting only common law tort claims. It contests the manner in which state procedures were followed. It claims that the Defendants violated state rules and procedures when they enforced the Ohio Supreme Court's valid death warrant for Mr. Clark. It cites to state protocols that require a sufficient number of physicians to attend the execution. (Doc. 1, Complaint, ¶ 9.) It refers to procedures that require the warden both to supervise the execution of the death sentence and to brief certain personnel to obtain information. (Doc. 1, Complaint,¶ 10.) It refers to procedures that require a medical review of the condemned offender. (Doc. 1, Complaint, ¶ 11.)[6]

The Complaint contends that a standard of care, created by state law, was not met. This sets forth a claim of negligence or negligence *per se*. However, mere negligence fails to establish liability for a civil rights violation under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976); *see Anderson v. St. Francis-St. George Hosp.*, 77 Ohio St.3d 82, 84 (1996)

---

[6] Additionally, Plaintiff Clark complains that certain steps were taken that did not comply with state procedures. (Doc. 1, Complaint, ¶ 17-8.) She complains about the total time taken and efforts (i.e. establishing intravenous lines) to complete this execution of a death sentence, comparing it to other executions. (Doc. 1, Complaint, ¶¶ 25, 20, and 32-3.) She references state law (i.e. DRC Policy 01-COM-11 (Eff. 11 Oct. 2006) (copy attached) and Ohio Rev. Code § 2949.22), and then complains that the Defendants did not comport their behaviors to such law.

(elements of negligence include duty, breach, causation and damages); *Chambers v. St. Mary's Sch.*, 82 Ohio St.3d 563, 565-6 (1998) (negligence *per se* relieves plaintiff only as to duty and breach elements). This Complaint thus fails to identify a federally protected right for which vindication under § 1983 may be sought. (Doc. 1, Complaint, *passim*.) Not having identified such a right, the instant Complaint fails. *Redding*, 241 F.3d at 532; *Estelle*, 429 U.S. at 105-106; *Collins*, 503 U.S. at 119; *and* s*ee West*, 487 U.S. at 48 and *Mezibov*, 411 F.3d at 716-7.

      **3.    Based upon prevailing concepts of society's evolving standards of decency, no Defendant violated Mr. Clark's Eighth Amendment rights.**

In the event that Plaintiff Clark has asserted a federally protected right, it goes without saying that the asserted right must fall within the scope of the Eighth Amendment's protection. Applicable Eighth Amendment jurisprudence reflects the evolving standards of treatment to be provided to offenders incarcerated in the nation's prison system. The Supreme Court has referred to such an evolving standard well before its seminal decision in *Estelle v. Gamble*, 429 U.S. 97 (1976) (inmate's medical deliberate indifference claim cognizable under Eighth Amendment). However, this evolving standard does not compel recovery for this Plaintiff.[7]

As explained in *Baze*, the Supreme Court never has invalidated any form of death penalty presented to it. *Baze*, 128 S.Ct. at 1530. That is true for death by hanging, firing squad, electrocution and via the gas chamber. *Id.* at 1526 (internal citations omitted). Case law also validates the method of execution followed in Ohio. *See Workman v. Bredensen*, 486 F.3d 896, 906 (6th Cir. 2007) (Tennessee's death penalty procedures, which also uses a set of three chemicals, upheld under Eighth and Fourteenth Amendments). By way of such jurisprudence,

---

[7] Three Justices most recently referred to that evolving standard in *Baze*, 128 S.Ct. at 1548 (Stevens, J. concurring); 128 S. Ct. at 1568 (Ginsburg and Souter, JJ. dissenting) ("The Eighth Amendment, we have held, "'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Atkins v. Virginia*, 536 U.S. 304, 311-312, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion)).

the Supreme Court accepts that (1) the death penalty itself is constitutionally permitted and (2) pain may be part of the process to end the condemned's life. *Baze*, *supra.*

The Sixth Circuit also has examined society's current expectations on the death penalty. It has addressed whether viable claims arise either as to how the process is carried out (i.e. negligence as a theory) and whether pain may be part of the process. It held prior to *Baze*: "The risk of negligence in implementing a death-penalty procedure…does not state a cognizable Eighth Amendment claim." *Workman*, 486 F.3d at 907-8. The Sixth Circuit also assessed the role of pain in the execution process, explained below.

In *Workman*, the Sixth Circuit assessed a claim brought by a condemned offender in Tennessee. That inmate challenged Tennessee's death sentence procedures, which included use of the three drugs that Ohio uses – sodium thiopental; pancuronium bromide and potassium chloride. *Workman*, 486 F.3d at 902. In *Workman*, it was accepted that the dose of sodium thiopental (five grams – Ohio uses two) would render a condemned offender unconscious. *Id*. at 907. Thus, the issue addressed in *Workman* asked whether Tennessee's pain avoidance procedures were constitutionally permissible. *Id.*

In rejecting such a claim, *Workman* reasoned – one year prior to *Baze* – that, "At some level, every execution procedure ever used contains risk that the individual's death will not be entirely pain free." *Workman*, 486 F.3d at 908. *Workman* noted from the Ninth Circuit Court:

> Obviously, there are risks involved in virtually every method of execution. However, the Supreme Court has rejected Eighth Amendment challenges based upon "unforeseeable accident," and has presumed that state officials have acted "in a careful and humane manner."

*See Workman*, 486 F.3d at 908, citing *Beardslee v. Woodford*, 395 F.3d 1064, 1075 (9th Cir. 2005) (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947) (second attempt to execute by electrocution not unconstitutional); *Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir.

8

1994) (*en banc*) ("The risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review.")

It is possible that Plaintiff Clark contends that negligence in performing Ohio's execution procedures constitutes deliberate indifference or some other civil rights violation. Plaintiff apparently contends such a claim is viable because Joseph Clark allegedly experienced pain during the execution process. However, the Sixth Circuit has rejected such a claim. *Workman*, 486 F.3d at 907-8. Nothing in Plaintiff's Complaint negates or even questions the presumption that state actors proceed in carefully and in a humane manner to carry out the death penalty. *See Workman*, 486 F.3d at 908, citing *Beardslee v. Woodford*, 395 F.3d 1064, 1075 (9th Cir. 2005) (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947) (second attempt to execute by electrocution not unconstitutional).

The Eighth Amendment does not require compensation if a condemned inmate experiences pain when put to death via a constitutionally permitted procedure. As the Supreme Court explained in *Baze*: "The risk of pain is inherent in any method of execution – no matter how humane – if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 128 S.Ct at 1529. At best, Plaintiff Clark has alleged that Mr. Clark experienced pain before dying. (Doc. 1, Complaint, *passim*.) This fails to set forth a cognizable claim, and the instant action must fail. *Baze*, 128 S.Ct. at 1529; *Workman*, 486 F.3d at 907-8.

**4.     Defendants are entitled to immunity, either qualified, quasi-judicial, or both.**

**a.     All Defendants are entitled to qualified immunity.**

While these Defendants should prevail on the elements of Plaintiff Clark's claims, qualified immunity must not be ignored. Government officials sued in their individual capacities

may seek qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.*  A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Sixth Circuit typically examines two questions when assessing whether a government official is entitled to qualified immunity.  First, the analysis examines whether a constitutionally protected right has been violated.  Second, the analysis examines whether such a right clearly was established at the time of the asserted deprivation.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-1 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

No condemned inmate within the Sixth Circuit has a federally protected right to a pain-free death.  *Baze*, 128 S.Ct. at 1529; *Workman*, 486 F.3d at 908 ("At some level, every execution procedure ever used contains risk that the individual's death will not be entirely pain free.")  Likewise, as established above, no condemned inmate suffers unconstitutional treatment when it is merely alleged that state procedures to end an inmate's life were not followed.  *Workman*, 486 F.3d at 907-8.  Further, as established above, no constitutionally forbidden conduct occurs when a prison official merely may have not performed tasks pursuant to some arguably applicable state law or policy cited as a standard of care.  *See*, *Estelle*, 429 U.S. at 105-6.  Hence, no reasonable prison official could have known that any federally protected right was in any jeopardy.  Thus, these Defendants are entitled to qualified immunity under this first prong of the qualified immunity analysis.

The second prong of the qualified immunity analysis favors these Defendants as well.  It appears that no binding case law existed prior to the date of the instant execution, May 2, 2006,

to inform any reasonable prison official that the acts alleged in the instant Complaint would violate federally protected rights. In fact, following Mr. Clark's death, both the Sixth Circuit and the Supreme Court each issued an applicable decision that supports the Defendants. Those two cases resolved issues concerning nearly identical death penalty procedures, and they would lead a reasonable government official to conclude that any act set forth in Plaintiff Clark's Complaint would <u>not</u> violate federally protected rights. *See Baze* and *Workman*, *supra*. Thus, these Defendants also are entitled to qualified immunity on this prong of the analysis such that all claims must be dismissed with prejudice.

### b. All Defendants are entitled to quasi-judicial immunity.

Absolute immunity applies to bar the case, both litigation and liability as to damages. The question of whether immunity will attach in a 42 U.S.C. § 1983 action is a question of federal law. *Martinez v. California,* 444 U.S. 277, 284, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1990).[8] Absolute immunity protects "officials whose special functions or constitutional status requires complete protection from suit[.]" *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Pray v. City of Sandusky,* 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Harlow,* 457 U.S. at 818)). It shields officials "from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly." *Dean*, 354 F.3d at 554.

Without doubt, judges are immune from lawsuits seeking money damages. *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286 (1991). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer…shall be free to act upon his own convictions,

---

[8] The applicability of judicial or quasi-judicial immunity is subject to *de novo* review upon appeal. *Barnes v. Wright*, 449 F.3d 709, 714 (6th Cir. 2006) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999)).

without apprehension of personal consequence to himself.'" *Id*. at 9, quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L. Ed. 646 (1872).

Equally undoubted, executive officers, when acting under a legal obligation to enforce a court order, also are protected by a form of absolute immunity. This type of protection from suit is quasi-judicial immunity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). If they enforce a facially valid court order, law enforcement officers are entitled to quasi-judicial immunity. *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000). Here, quasi-judicial immunity applies.[9]

On November 24, 1984, the Lucas County Court of Common Pleas accepted the jury's recommendation and sentenced Mr. Clark to death for the aggravated murder of one of his victims, David Manning. *State v. Clark*, 38 Ohio St.3d 252, 527 N.E.2d 844 (1988). After exhaustion of all appeals and other challenges to Mr. Clark's underlying conviction and sentence, the Ohio Supreme Court issued an Entry and Death Warrant, ordering Mr. Clark's death.[10] In that Order, the Ohio Supreme Court commanded the Defendants as follows:

> "IT IS FURTHER ORDERED by the Court that the appellant's sentence be carried into execution by the Warden of the Southern Ohio Correctional Facility or, in his absence, by the Deputy Warden on Tuesday, May 2, 2006, in accordance with the statutes so provided."

The Ohio Supreme Court's Entry and Death Warrant incorporates Ohio state law, specifically Ohio Rev. Code § 2949.24, which requires (emphasis added):

---

[9] Persons who faithfully execute valid court orders are immune from suit for damages for actions performed in compliance with that order. *Coverdell v. Department of Social & Health Services*, 834 F.2d 758, 764 (1987); *Morstad v. Dept. of Corrections & Rehabilitation*, 147 F.3d 741 (8th Cir. 1998); *Hansel v. Bisard*, 30 F. Supp. 2d 981, 986-987 (E.D. Mich., 1998); *Moss v. Kopp*, 505 F. Supp.2d 1120, 1125 (C.D. Utah, 2007). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847. In assessing quasi-judicial immunity, courts must look to the nature of the function performed, not the identity of the person who performed it. *Id*, citing, *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538 (1988).

[10] *See Ohio v. Clark*, Case No. 1987-327 (online docket, as visited July 18, 2008, http://www.sconet.state.oh.us/clerk_of_court/ecms/resultsbycasenumber.asp?type=3&year=1987&number=0327&myPage=searchbypartyname.asp

>the warden or another person selected by the director of rehabilitation and correction **shall proceed** at the time and place named in the [death] warrant to ensure that the death sentence of the prisoner under death sentence is executed in accordance with section 2949.22 of the Revised Code.

State prison officials are directed by statute to carry out the sentence of death. Ohio Rev. Code § 2949.24. They are directed by statute to end a condemned inmate's life pursuant only to a lawfully issued death warrant. They are meting out punishment ordered by a criminal sentencing court, and thus they are entitled to absolute quasi-judicial immunity.

As explained by the Sixth Circuit, "an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Thus, the Sixth Circuit held that police officers who enforce a court order to close establishments to prevent nude dancing are entitled to immunity as explained below. *Cooper*, 203 F.3d at 943. [11]

In *Cooper*, two officers, acting pursuant to a valid court order, went to eight (8) night clubs and seized the premises. They prohibited further dancing, ordered club occupants to produce identification, recorded the occupants' information, and later served subpoenas on the occupants to provide sworn statements. The owners sued, contending violations of their Fourth and Fourteenth Amended rights. The Sixth Circuit held that because the agents were acting pursuant to a valid court order, which gave the agents authority to seize the nightclubs, the agents

---

[11] Circuit courts around the country have recognized quasi-judicial immunity for governmental officials who execute court orders. *See, e.g., Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991); *Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3rd Cir. 1998); *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996); *Dunn v. City of Elgin*, 347 F.3d 641, 647 (7th Cir. 2003); *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003); *Whitesel v. Sengenberger*, 222 F.3d 861, 869 (10th Cir. 2000) ("Officials must not be called upon to answer for the legality of decisions which they are powerless to control…." [internal quotation omitted]); *Roland v. Phillips*, 19 F.3d 552, 555-56 (11th Cir. 1994).

were entitled to quasi-judicial immunity. It held that because the agents did not exceed the scope of the order, they were immune from suit. *Cooper*, 203 F.3d at 943.

In the present case, no allegations exist that the Defendants exceeded the scope of the Ohio Supreme Court's order to execute Clark. No allegations exist that the Defendants knowingly or otherwise enforced an invalid court order. No allegations exist that these Defendants exceeded the scope of applicable statutes or policies and procedures. (Doc. 1, Complaint, *passim*.) Each Defendant must receive quasi-judicial immunity.[12]

### 5. This Court has no jurisdiction to resolve any state law claims.

In addition to the merits and immunity defenses, Plaintiff Clark's Complaint should be dismissed due to a jurisdictional defect. State law claims against an individual state employee are not properly before any district court unless first the Ohio Court of Claims has determined whether the employee is entitled to immunity. The Sixth Circuit has held and explained:

> A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945). Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities. In that regard, the only recognized cause of action lies, initially, against the State of Ohio in the Court of Claims. Ohio Rev.Code Ann. § 2743.02(F) (Anderson Supp. 1988). Accordingly, the district court may not assert pendent jurisdiction over plaintiff's [state law claim] until such time as a cause of action against defendants is recognized under Ohio law.

---

[12] Case law is replete with similar conclusions. *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (juvenile court administrator not liable for injuries inflicted by youth on plaintiff where youth was housed with plaintiff pursuant to a pre-trial detention order); *Martin v. Hendren*, 127 F.3d 720 (8th cir. 1997) (bailiff negligently removed plaintiff from court per court's order after plaintiff had become disruptive, showing need to enable executive officials to fear no repercussions from enforcing valid court orders).

*Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). The Ohio Court of Claims' initial jurisdiction is well established in Ohio case law. *See Conley v. Shearer*, 64 Ohio St.3d 284, 286, 595 N.E.2d 862, 865 (1992). To the extent Plaintiff Clark asserts violations of state law, or presents any common law claims, she presents claims that must be heard in the Ohio Court of Claims first or prior to initiating this suit. Thus, any state law claim fails for lack of jurisdiction.

### III. Conclusion

Defendants ask the Court to both dismiss the Complaint with prejudice and tax all costs to the Plaintiff.

Respectfully submitted,

NANCY H. ROGERS
Attorney General of Ohio

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
Assistant Attorney General
Corrections Litigation Section
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215
614/644-7233; Fax: 866-459-6675
eholloway@ag.state.oh.us
Trial Counsel for Defendants

### CERTIFICATE OF SERVICE

I certify that, on 8th October 2008, a copy of the foregoing ***Defendants' Motion for Judgment on the Pleadings*** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Alan S. Konop (0029036)
413 N. Michigan Street
Toledo, Ohio 43624
(419) 255-0571; Fax (419) 255-6227

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY