IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Irma Clark, on behalf of Joseph Lewis Clark,** | : | |
| | : | |
| Plaintiff, | : | Case No. 1:07-cv-00510 |
| | : | |
| -vs- | : | District Judge Michael R. Barrett |
| | : | |
| **Edwin Voorhies, et al.,** | : | |
| | : | |
| Defendants. | : | |

### Defendants' Second Motion for Judgment on the Pleadings

Plaintiff having amended her Complaint, Defendants move again for judgment on the pleadings. Fed. R. Civ. Pro. 12(c). The attached Memorandum supports this Motion.

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General

*/s/ J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
Assistant Attorney General
Criminal Justice Section
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215
614/644-7233; Fax: 866-459-6675
Eric.Holloway@OhioAttorneyGeneral.gov
Trial Counsel for Defendants

<u>**Memorandum in Support**</u>

### I.    Introduction

During January 1984, Joseph Lewis Clark committed crimes that led to his criminal convictions resulting in the death penalty. *See Clark v. Mitchell*, 425 F.3d 270, 273-6 (6th Cir. 2005) (quoting in part *State of Ohio v. Clark*, 38 Ohio St.3d 252, 527 N.E.2d 844, 846-7 (1988)). On May 2, 2006, after all possible appeals and collateral challenges in state and federal courts, *id.*, the Ohio Supreme Court's warrant of death was enforced, and Mr. Clark died that day, (*see* Doc. 25, Amended Complaint, ¶ 18).

Plaintiff Irma Clark, Mr. Clark's mother, then filed the instant civil rights action, challenging the manner in which Mr. Clark died. (Doc. 1, Complaint.) After Defendants had filed their first motion for judgment on the pleadings, Plaintiff filed an Amended Complaint. (Doc. 25.) Plaintiff Clark does not specify which of Mr. Clark's federally protected rights were violated. (*Id. passim* and specifically at ¶¶ 45-52.) She only indicates that problems with accessing Mr. Clark's veins were foreseeable. (*Id., passim* and particularly ¶¶ 6, 20, 48-50.) She presumes that, due to past problems with accessing the veins of prior condemned inmates with a history of intravenous drug abuse, these Defendants should have known her son's veins would fail. (Doc. 25, Amended Complaint, ¶ 47.) At best, this alleges mere negligence. The Amended Complaint must be dismissed, as Plaintiff Clark failed to state any claims for which the Court may grant relief.

### II.    Standard of Review and Elements of a Section 1983 Claim

**A.    Standard of Review**

When reviewing a motion to dismiss based upon the sufficiency of the allegations of a complaint, a court considers whether any non-conclusory factual allegations present a plausible claim for relief. *See Delay v. Rosenthal Collins Group, Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009), citing *Ashcroft v.*

*Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009). Courts must not augment a complaint with allegations not provided by the plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**B.    Elements of a § 1983 claim**

To establish a viable claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that a person, acting under color of state law, violated a federally protected right. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels* v. *Williams*, 474 U.S. 327 (1986)). Conclusory allegations fail to state a claim for purposes of any claim brought under § 1983. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008). Here, Plaintiff Clark failed to identify any federally protected right that was violated.

**III.    Law and Argument – Each Defendant is entitled to judgment on the pleadings.**

The Court should grant judgment on the pleadings for these reasons:

1. Neither Ohio's death penalty procedures nor Defendants themselves violated the Eighth Amendment when Mr. Clark's execution was performed.
2. Defendants are entitled to immunity, either qualified, quasi-judicial, or both.
3. All claims for injunctive relief are moot, as Ohio unilaterally has altered its death penalty procedures.
4. This Court has no jurisdiction to resolve any state law claims.

**A.    Neither Ohio's death penalty procedures nor Defendants themselves violated the Eighth Amendment when Mr. Clark's execution was performed.**

**1.    Ohio's execution protocols in May 2006 were constitutionally sound.**

**a.    The Sixth Circuit recently established the parameters to state a claim under *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520 (2008).**

In a recent decision, the Sixth Circuit addressed claims by a death-sentenced offender that Ohio's execution procedures are unconstitutional, finding them to be constitutional. *Cooey II (Biros) v. Strickland*, ___ F.3d ___ (6th Cir., Dec. 7, 2009) (2009 U.S. App. Lexis 26695) ("*Cooey*" hereinafter). In *Cooey*, the Sixth Circuit assessed how a condemned inmate may challenge whether a state's death

3

penalty procedures themselves are constitutionally sound, applying the Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520 (2008). Through *Cooey*, it is known how to assess in the Sixth Circuit claims raised under *Baze*.

In *Cooey*, death-sentenced offender Kenneth Biros, intervening in *Cooey*, had challenged recent changes to Ohio's execution protocols which entail using only one drug, sodium thiopental, delivered intravenously in a lethal amount, intended to end his life. As a back-up, those procedures now permit using an intramuscular injection of a lethal amount of a two-chemical mixture, midazolam and hydromorphone, to end a death-sentenced offender's life. *Cooey*, at p. *15-7.[1]

Addressing Mr. Biros' claim, the Sixth Circuit presented in *Cooey* a framework of Eighth Amendment concepts and holdings that also apply here. At least three points can be derived from *Cooey* regarding such claims under *Baze*. First, the death penalty is a constitutionally permitted form of punishment. *Cooey*, p. *1. The penalty itself may not be proscribed by challenges as to how an execution is completed. *Id.* at 18. While an extreme form of punishment, it is intended for extreme crimes committed against the dignity and peace of society. *See Id.* at p. *21, citing *Gregg v. Georgia*, 428 U.S. 153, 169, 187 (1976) (plurality opinion). Further, the Eighth Amendment serves to encourage States to develop even more humane means of punishment as society progresses and develops. *Id.* at p. *22.

Second, the executive branch of each sovereign State carries out the death penalty, retaining discretion to carry out such executions that is limited by the appropriate confines of the Eighth Amendment. *Cooey*, p. * 1. The federal courts are not to substitute their own judgment of what constitutes "best practices" to establish the least amount of risk of creating unconstitutional levels of pain felt by the condemned. *Id.* at p.*19. It goes without saying almost that torture, lingering death,

---

[1] For informational purposes only, Defendants note that Mr. Biros was put to death on December 8, 2009, using only the intravenous administration of sodium thiopental.

barbarous acts, inhumane treatment are not permitted. Instead, efforts to execute an offender may be taken only to the extent intended to extinguish the condemned offender's life. *Id.* at p.* 21-2 (case cites omitted).

Third, pain may be part of the execution process. *Id.* at p.* 18; *Workman v. Bredensen*, 486 F.3d 896, 908 (6th Cir. 2007). The Eighth Amendment does not require compensation when a condemned inmate experiences pain while being put to death via a constitutionally permitted procedure. As the Supreme Court explained in *Baze*: "The risk of pain is inherent in any method of execution – no matter how humane – if only from the prospect of error in following the required procedure. The Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 128 S.Ct at 1529.

However, the process may not involve the wanton infliction of pain. *Id.* at 22, citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion). The *Cooey* decision further emphasized that pain-free procedures are not required for States to pass constitutional review. In so holding, it relied, in part, upon a passage from *Resweber* in which the Supreme Court's plurality opinion explained:

> The cruelty against which the Constitution protects a convicted [person] is cruelty inherent in the method of punishment, not the necessary suffering involving in any method employed to extinguish life humanely.

*Cooey*, at p.*24 (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947) (plurality opinion). Simply, pain may be part of the process.

Under such a backdrop, the Sixth Circuit announced in *Cooey* the law of the circuit to evaluate the constitutionality of a State's execution procedures. To that end, the Sixth Circuit applied the Supreme Court's recent plurality decision in *Baze v. Rees*, 533 U.S. 35, 128 S.Ct. 1520

5

(2008), which had concluded that Kentucky's three-chemical execution protocol was constitutional. *Baze,* 128 S.Ct. at 1529.[2]

In the Sixth Circuit, to assess the constitutionality of a State's execution procedures, a death-sentenced offender must show that an execution protocol, "creates an 'objectively intolerable risk of harm' or a 'demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.' *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520, 1531, 1537 [ ] (2008) (plurality opinion)." *Cooey*, p. *1-2.[3]

Further, to establish a *Baze* claim, a plaintiff must contend that he or she has an alternative method to execute the death penalty. That alternative must be more humane than what the State uses. *Baze* requires a plaintiff to show that, "a proffered alternative[]…effectively address[es] a 'substantial risk of serious harm.'" *Baze*, 128 S.Ct. at 1531, quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Further, that alternative procedure must be "feasible, readily implemented, and in fact

---

[2] In Kentucky, a condemned inmate is put to death by using a set of three drugs: (1) sodium thiopental, which renders the inmate unconscious; (2) pancuronium bromide, which paralyzes the inmate; and (3) potassium chloride, which stops the inmate's heart. *Baze*, 128 S. Ct. at 1528. In 2006, Ohio used the same set of chemicals in its death penalty execution procedures. As in Kentucky, Ohio uses a procedure with three chemicals to execute a death warrant as issued by the Ohio Supreme Court on a lawful sentence of death. Specifically, Ohio applies the same three set of chemicals as reviewed in *Baze*, although the State of Ohio used different amounts of each chemical. *See* DRC Policy 01-COM-11 (Eff. 11th Oct. 2006) (copy attached to Defendants' First Motion for Judgment on the Pleadings at Doc. 11-2); *see* Ohio Rev. Code § 2949.22 (death sentence to be carried out via lethal injection of drug or combination of chemicals) *and see* Ohio Rev. Code § 2949.24 (state prison official shall execute death sentence in accordance with § 2949.22 of the Ohio Revised Code).

[3] As explained by *Cooey* regarding plurality opinions from the Supreme Court, "The plurality opinion in *Baze* sets the ground rules for gauging Biros's likelihood of success in challenging Ohio's procedure. *See Marks v. United States*, 430 U.S. 188, 193 [ ] (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [the majority], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (citing *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 [ ] (1976) (plurality opinion))). *Cooey*, p. *17-8.

6

significantly reduce a substantial risk of severe pain." *Baze*, 128 S.Ct. at 1532.  As explained below, Plaintiff Clark's Amended Complaint fails to state a claim for which any relief may be granted.

> **b.    Applying *Cooey*, Plaintiff Clark's Amended Complaint must fail.**

Plaintiff Clark's Amended Complaint does nothing to comply with *Baze*.  It does not even hint that the execution protocol in place in May 2006 "create[ed] an 'objectively intolerable risk of harm.'"  It does not allege a "'demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.'"  *Cooey*, p. *1-2 (quoting *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520, 1531, 1537).  While it notes that Mr. Clark had hypodermic needles inserted up to nineteen times, it alleges no other force used on him.  Arguably, the Amended Complaint agrees that any such insertions occurred to carry out the death warrant to end Mr. Clark's life.  (*See* Doc. 25, Amended Complaint, ¶¶ 32-4, 36, and 39.)

Plaintiff Clark's Amended Complaint also is devoid of any language that suggests she has a better, more humane execution procedure that complies with *Baze*.  It is devoid as well of any allegation that Mr. Clark offered a better procedure prior to the execution order being enforced. (Doc. 25, Amended Complaint, ¶ *passim*.)  The Amended Complaint does not articulate how Defendants could have performed the instant execution of the death warrant, issued by the Ohio Supreme Court, in a manner that would have been (1) feasible, (2) readily implemented, and (3) able to significantly reduce a substantial risk of severe pain. (Doc. 25, Amended Complaint, ¶ *passim*.)  It merely contests the manner in which state procedures were followed to enforce an order to carry out the death penalty issued in Mr. Clark's criminal case.  (*Id., passim*.)  As such, the instant Complaint should fail at least to the extent it challenges the constitutionality of Ohio's May 2006 execution protocols themselves.  *Baze*, 128 S.Ct. at 1531-2.

### 2. Defendants properly implemented Ohio's execution protocols in May 2006 such that Mr. Clark's civil rights were not violated.

Alternatively, Plaintiff Clark could be asserting a claim that the manner itself in which Mr. Clark was put to death was unconstitutional. In so doing, Plaintiff Clark arguably only contends that mere negligence occurred when Defendants used Ohio's execution procedures. Plaintiff asserts such a claim by alleging that Joseph Clark experienced pain during the execution process. However, the Sixth Circuit has rejected such a theory of relief. *Cooey, supra*; *Workman*, 486 F.3d at 907-8.

Further, the *Baze* Court considered "the prospect of error in following the required procedure" when rejecting the notion that pain might be inflicted as part of the execution procedure. *Baze*, 128 S.Ct at 1529. Nothing in Plaintiff's Amended Complaint negates the presumption that state actors proceed carefully and humanely when carrying out the death penalty. *See Workman*, 486 F.3d at 908, citing *Beardslee v. Woodford*, 395 F.3d 1064, 1075 (9th Cir. 2005) (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947) (second attempt to execute by electrocution not unconstitutional).

In protesting the amount of pain Mr. Clark experienced, Plaintiff notes the number of times an effort was made to insert a hypodermic needle into Mr. Clark. Plaintiff also notes that Mr. Clark was heard to moan during the process as well. (Doc. 25, Amended Complaint, ¶ 35.) As established above, Plaintiff Clark must assert a violation of a federally protected right, and mere negligence does not suffice. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels* v. *Williams*, 474 U.S. 327 (1986)); *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976). Further, the Supreme Court has explained:

> Although [42 U.S.C. § 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law, *see, e.g.*, *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980); *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).

*Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992); *see West v. Atkins*, 487 U.S. 42, 48 (1988) (citing 42 U.S.C. § 1983); *Mezibov v. Allen*, 411 F.3d 712, 716-7 (6th Cir. 2005). When a Plaintiff "fails to make a showing on any essential element of a § 1983 claim, [the claim] must fail." *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

For at least two more reasons, the Amended Complaint fails to the extent it complains about pain that Mr. Clark endured while being put to death pursuant to a lawful death warrant issued by the Ohio Supreme Court. First, the Amended Complaint asserts only common law tort claims. It contests the manner in which state procedures were followed. It claims that Defendants violated state rules and procedures when they enforced the Ohio Supreme Court's valid death warrant for Mr. Clark because –

- the Defendants did not comply with state protocols that require a sufficient number of physicians to attend the execution, (Doc. 25, Amended Complaint, ¶ 15);
- the Defendants did not conduct a medical review of the condemned offender. (Doc. 25, Amended Complaint, ¶ 13), and,
- the Warden did not supervise the execution nor brief certain personnel to obtain information, (Doc. 25, Amended Complaint, ¶ 12, 16).[4]

Such allegations amount to an assertion that state rules, regulations and/or laws were not followed – that is, Plaintiff claims state law has been violated in her effort to vindicated federally protected rights within this § 1983 action, which must fail to gain relief. *Bloch, Estelle, Collins, supra.*

Second, in addition to the state law theories that permeate the Amended Complaint, Plaintiff Clark arguably contends that the number of attempts to establish a Heparin lock via hypodermic needles imposed cruel and unusual punishment. However, the *Cooey* Court rejected all arguments

---

[4] Additionally, Plaintiff Clark complains that certain steps were taken that did not comply with state procedures. (Doc. 25, Amended Complaint, ¶ 21, 30.) She complains about the total time taken and efforts to complete this execution of a death sentence. (Doc. 25, Amended Complaint, ¶¶ 34 and 44.) She references state law, protesting Defendants failure to comport with such law. (*See* Doc. 25, Amended Complaint, ¶¶ 11-3 [DRC Policy 01-COM-11 (Eff. 11 Oct. 2006)] and ¶ 49 [Ohio Rev. Code § 2949.22]).

related to the administration of the lethal chemicals through intravenous access. In particular, it rejected the notion that the protocols are unconstitutional because it (1) could be misapplied (2) relies upon using allegedly insufficiently trained medical personnel, (3) lacks a trained physician to provide oversight or (4) lacks a proscribed, set period of time in which to try to establish an IV site. *See Cooey*, at p.*27-42.

Accordingly, the State may attempt to establish an IV line, using multiple efforts as needed, negating any notion that pain after a certain number rises to the level of unconstitutional conduct. Defendants did not violate Mr. Clark's protected rights when he was put to death, and Plaintiff's Amended Complaint asserts nothing that amounts to a violation of a federally protected right.

**B.      Defendants are entitled to immunity, either qualified, quasi-judicial, or both.**

**1.      All Defendants are entitled to qualified immunity.**

While these Defendants should prevail on the elements of Plaintiff Clark's claims, qualified immunity must not be ignored. Government officials sued in their individual capacities may seek qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court recently decided a case in which the analysis to assess the defense of qualified immunity was further refined. On January 21, 2009, the Supreme Court decided *Pearson v. Callahan*, __ U.S. ___, 129 S. Ct. 808 (2009). In that case, the Supreme Court was presented with a civil rights claim that police officers had violated a criminal defendant's civil rights under the Fourth Amendment. In its review, the Supreme Court addressed the rigid two-step qualified immunity

assessment required in its prior holding, *Saucier v. Katz*, 533 U.S. 194 (2001). In that decision, the Supreme Court had required:

> a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. [*Saucier*,] 533 U.S., at 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Ibid*. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Anderson*[ *v. Creighton*, 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)].

*Pearson*, __ U.S. at ___, 129 S.Ct. 815-6. Pearson rejected the rigid, two-step process. *Id.* at ___, 129 S.Ct. at 813. However, since *Pearson*, qualified immunity may be assessed initially upon either of the two prongs identified in *Saucier*.

First, Plaintiff Clark has not identified unconstitutional conduct. No condemned inmate within the Sixth Circuit has a federally protected right to a pain-free death. *Cooey, supra*; *Baze*, 128 S.Ct. at 1529; *Workman*, 486 F.3d at 908 ("At some level, every execution procedure ever used contains risk that the individual's death will not be entirely pain free.") Likewise, as established above, no condemned inmate suffers unconstitutional treatment when it is merely alleged that state procedures to end an inmate's life were not followed. *Workman*, 486 F.3d at 907-8. Further, as established above, no constitutionally forbidden conduct occurs when a prison official merely may have not performed tasks pursuant to some arguably applicable state law or policy cited as a standard of care. *See Estelle*, 429 U.S. at 105-6. Hence, no reasonable prison official could have known that any federally protected right was in any jeopardy. Thus, these Defendants are entitled to qualified immunity under this first prong of the qualified immunity analysis.

Second, the other prong of the qualified immunity analysis also favors these Defendants. It appears that no binding case law existed prior to the date of the instant execution, May 2, 2006, to inform any reasonable prison official that the acts alleged in the instant Amended Complaint would

11

violate federally protected rights.  In fact, following Mr. Clark's death, both the Sixth Circuit and the Supreme Court each issued an applicable decision that supports the Defendants.  Those two cases resolved issues concerning nearly identical death penalty procedures, and they would lead a reasonable government official to conclude that any act set forth in Plaintiff Clark's Amended Complaint would not violate federally protected rights.  *See Baze* and *Workman*, *supra.*  Thus, these Defendants also are entitled to qualified immunity on this prong of the analysis.  All claims must be dismissed with prejudice for this reason alone.

### 2. All Defendants are entitled to quasi-judicial immunity.

Alternatively to qualified immunity, quasi-judicial immunity should bar relief.  Absolute immunity applies to bar a case, both litigation and liability as to damages.  The question of whether immunity will attach in a 42 U.S.C. § 1983 action is a question of federal law.  *Martinez v. California,* 444 U.S. 277, 284, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1990).[5]  Absolute immunity protects "officials whose special functions or constitutional status requires complete protection from suit[.]"  *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Pray v. City of Sandusky,* 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Harlow,* 457 U.S. at 818)).  It shields officials "from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly."  *Dean*, 354 F.3d at 554.

Without doubt, judges are immune from lawsuits seeking money damages. *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286 (1991).  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer…shall be free to act upon his own convictions, without apprehension of

---

[5] The applicability of judicial or quasi-judicial immunity is subject to *de novo* review upon appeal.  *Barnes v. Wright*, 449 F.3d 709, 714 (6th Cir. 2006) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999)).

personal consequence to himself.'" *Mireles*, 502 U.S at 9, quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L. Ed. 646 (1872).

Also undoubted, when acting under a legal obligation to enforce a court order, executive officers also are protected by a form of absolute immunity. This type of protection from suit is quasi-judicial immunity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). If they enforce a facially valid court order, law enforcement officers are entitled to quasi-judicial immunity. *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000). Here, such quasi-judicial immunity also applies.[6]

On November 24, 1984, the Lucas County Court of Common Pleas accepted the jury's recommendation and sentenced Mr. Clark to death for the aggravated murder of one of his victims, David Manning. *State v. Clark*, 38 Ohio St.3d 252, 527 N.E.2d 844 (1988). After exhaustion of all appeals and other challenges to Mr. Clark's underlying conviction and sentence, the Ohio Supreme Court issued an Entry and Death Warrant, ordering Mr. Clark's death. In that Order, the Ohio Supreme Court commanded the Defendants as follows:

> IT IS FURTHER ORDERED by the Court that the appellant's sentence be carried into execution by the Warden of the Southern Ohio Correctional Facility or, in his absence, by the Deputy Warden on Tuesday, May 2, 2006, in accordance with the statutes so provided.

*See Ohio v. Clark*, 108 Ohio St. 3d 1485; 2006-Ohio-962 (2006). The Ohio Supreme Court's Entry and Death Warrant incorporates Ohio state law, specifically Ohio Rev. Code § 2949.24, which requires (emphasis added):

---

[6] Persons who faithfully execute valid court orders are immune from suit for damages for actions performed in compliance with that order. *Coverdell v. Department of Social & Health Services*, 834 F.2d 758, 764 (9th Cir. 1987) (children services employee obtained court order regarding child placement); *Morstad v. Dept. of Corrections & Rehabilitation*, 147 F.3d 741 (8th Cir. 1998) (court ordered psychologist to evaluate probationer, with evaluation forming basis to revoke probation; *Hansel v. Bisard*, 30 F. Supp. 2d 981, 986-987 (E.D. Mich., 1998) (police officer relied upon arrest warrant issued by judicial officer and thus entitled to immunity); *Moss v. Kopp*, 505 F. Supp.2d 1120, 1125 (C.D. Utah, 2007) (law enforcement entitled to immunity in enforcing civil order pertaining to production of civil discovery). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847. In assessing quasi-judicial immunity, courts must look to the nature of the function performed, not the identity of the person who performed it. *Id*, *citing*, *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538 (1988).

>the warden or another person selected by the director of rehabilitation and correction **shall proceed** at the time and place named in the [death] warrant to ensure that the death sentence of the prisoner under death sentence is executed in accordance with section 2949.22 of the Revised Code.

State prison officials are directed by statute to carry out the sentence of death. Ohio Rev. Code § 2949.24. They are directed by statute to end a condemned inmate's life pursuant only to a lawfully issued death warrant. They are meting out punishment ordered by a criminal sentencing court and pursuant to a warrant issued by the Ohio Supreme Court. The law favors protecting government officials who enforce court orders so that the judiciary remains potent and not feckless in the wake of warrants and orders that are not enforced.

As explained by the Sixth Circuit, "an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Thus, the Sixth Circuit has held that police officers who enforce a court order to close establishments to prevent nude dancing are entitled to immunity as explained below. *Cooper*, 203 F.3d at 943.[7]

In *Cooper*, two officers, acting pursuant to a valid court order, went to eight (8) night clubs and seized the premises. They prohibited further dancing, ordered club occupants to produce identification, recorded the occupants' information, and later served subpoenas on the occupants to provide sworn statements. The owners sued, contending violations of their Fourth and Fourteenth Amended rights. The Sixth Circuit held that because the agents were acting pursuant to a valid court order, which gave the agents authority to seize the nightclubs, the agents were entitled to

---

[7] Circuit courts around the country have recognized quasi-judicial immunity for governmental officials who execute court orders. *See, e.g., Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991); *Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3rd Cir. 1998); *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996); *Dunn v. City of Elgin*, 347 F.3d 641, 647 (7th Cir. 2003); *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003); *Whitesel v. Sengenberger*, 222 F.3d 861, 869 (10th Cir. 2000) ("Officials must not be called upon to answer for the legality of decisions which they are powerless to control…." [internal quotation omitted]); *Roland v. Phillips*, 19 F.3d 552, 555-56 (11th Cir. 1994).

quasi-judicial immunity. It held that because the agents did not exceed the scope of the order, they were immune from suit. *Cooper*, 203 F.3d at 943.

In the present case, no allegations exist that any Defendants exceeded the scope of the Ohio Supreme Court's order to execute Mr. Clark. Plaintiff did not allege that the Defendants knowingly or otherwise enforced an invalid court order. Plaintiff did not allege that these Defendants exceeded the scope of applicable statutes or policies and procedures. (Doc. 25, Amended Complaint, *passim*.) They followed an order issued by a court, and they must each receive quasi-judicial immunity.[8]

### C. All claims for injunctive relief are moot, as Ohio unilaterally has altered its death penalty procedures.

Since the filing of this lawsuit, Ohio has announced its unilateral changes to its death penalty procedures. *Cooey, supra*, at p. *2-4. The protocol relies upon only one chemical (sodium thiopental) to cause death, delivered intravenously. *Id.* at p. *2-3, and 15. Ohio also has a back-up procedure, should a problem arise with the delivery intravenously of that one chemical. In that event, a mixture of two chemicals, hydromorphone and midazolam, would be injected, intramuscularly. *Id.* at p.* 16-7. The Sixth Circuit has ruled that this new protocol is constitutionally sound. *Id.* at p. *58-9.

In light of the constitutionality of Ohio's current execution protocols, no need exists to issue any injunctive relief. *See Kellogg v. Shoemaker*, 46F.3d 503, 506 n. 3 (6th Cir. 1995) (change in state's procedures negates need for injunctive relief, mooting plaintiffs' claims). Given that Mr. Clark is no longer incarcerated, that also negates the need for injunctive relief. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003). Hence, all claims for injunctive relief should be dismissed.

---

[8] Case law is replete with similar conclusions. *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (juvenile court administrator not liable for injuries inflicted by youth on plaintiff where youth was housed with plaintiff pursuant to a pre-trial detention order); *Martin v. Hendren*, 127 F.3d 720 (8th cir. 1997) (bailiff negligently removed plaintiff from court per court's order after plaintiff had become disruptive, showing need to enable executive officials to fear no repercussions from enforcing valid court orders).

15

**D.    This Court has no jurisdiction to resolve any state law claims.**

In addition to the merits and immunity defenses, Plaintiff Clark's Amended Complaint should be dismissed due to a jurisdictional defect. State law claims against an individual state employee are not properly before any district court unless first the Ohio Court of Claims has determined that the employee is not entitled to immunity. The Sixth Circuit has held and explained:

> A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945). Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities. In that regard, the only recognized cause of action lies, initially, against the State of Ohio in the Court of Claims. Ohio Rev.Code Ann. § 2743.02(F) (Anderson Supp. 1988). Accordingly, the district court may not assert pendent jurisdiction over plaintiff's [state law claim] until such time as a cause of action against defendants is recognized under Ohio law.

*Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). The Ohio Court of Claims' initial jurisdiction is well established in Ohio case law. *See Conley v. Shearer*, 64 Ohio St.3d 284, 286, 595 N.E.2d 862, 865 (1992); *see Leaman v. Ohio Dept. of Mental Retardation and Development Disabilities*, 825 F.2d 946, 952 (6th Cir. 1987) (*en banc*), *cert. denied*, 487 U.S. 1204 (1988). To the extent Plaintiff Clark asserts violations of state law, or presents any common law claims, she presents claims that must be heard in the Ohio Court of Claims first or prior to initiating this suit. Thus, any state law claim fails for lack of jurisdiction.

### IV.    Conclusion

**A.    Position regarding oral argument**

From the Case Management Conference held in this matter, it is understood that a position regarding oral argument may be presented to the Court. Defendants favor oral argument whenever it would assist the Court. Hence, while Defendants do not seek oral argument, they would seek to

16

present their positions should it be deemed necessary or requested by Plaintiff and granted.

**B.    Dismissal is appropriate, with or without oral argument**

Defendants ask the Court to dismiss the Amended Complaint with prejudice, taxing all costs to the Plaintiff.

>Respectfully submitted,
>
>RICHARD CORDRAY
>Attorney General of Ohio
>
>*/s/ J. Eric Holloway*
>J. ERIC HOLLOWAY (0063857)
>Assistant Attorney General
>Criminal Justice Section
>150 E. Gay Street, 16th Floor
>Columbus, Ohio 43215
>614/644-7233; Fax: 866-459-6675
>Eric.Holloway!@OhioAttorneyGeneral.gov
>Trial Counsel for Defendants

### Certificate of Service

I certify that, on 28 January 2010, a copy of the foregoing **Defendants' Second Motion for Judgment on the Pleadings** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Alan S. Konop (0029036)
413 N. Michigan Street
Toledo, Ohio 43624
(419) 255-0571; Fax (419) 255-6227

>*/s/ J. Eric Holloway*
>J. ERIC HOLLOWAY